UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS DROWNS,

Plaintiff,                                                    Case No.

 vs

SUBURBAN MOTORS COMPANY, INC.,

Defendant.

_____/

Adam S. Alexander (P53584)
Andrew R. Mikos (P76268)
Counsel for Plaintiff
17200 W 10 Mile Rd, Ste. 200
Southfield, MI 48075
T: (248) 246-6353
F: (248) 746-3793
adalesq@gmail.com
amikos13@gmail.com
_____/

**PLAINTIFF'S COMPLAINT AND JURY DEMAND**

1.      Thomas Drowns ("Plaintiff"), or ("Mr. Drowns"), resides in Harrison

Township, Michigan.

2.      Plaintiff is a consumer as defined by the Fair Credit Reporting Act, 15 U.S.C. §

1681 et seq ("FCRA") at 1681a(c).

3.      Defendant Suburban Motors Company, Inc., a/k/a Suburban Cadillac,

("Suburban Cadillac"), or ("Defendant"), is an automobile dealership doing business

in Troy, Michigan, and is a furnisher as defined by the Fair Credit Reporting Act, 15

U.S.C. § 1681 et seq ("FCRA").

## JURISDICTION

4.      This Court has jurisdiction under the Fair Credit Reporting Act 15 U.S.C. § 1681 et seq ("FCRA").

5.      This Court is the proper venue as the acts giving rise to this Complaint occurred in this district.

## GENERAL ALLEGATIONS

6.      On 10/03/2014 Plaintiff received an email alert from his credit monitoring service "Protect My ID", indicating that his credit report had changed.  The email requested that he navigate to the "Protect My ID" web site for more details about the changes.

7.      On that same day, Plaintiff navigated to the "Protect My ID" website at www.protectmyid.com to view the alert items mentioned in step one and found that six (6) lenders/businesses had requested copies of his credit report. Plaintiff was asked by the website to dispute or accept the inquiries. Plaintiff disputed each of the six (6) inquiries for an extension of credit as not originating at his own request. The six (6) requests originated from the following organizations on 10/2/2014:

   a.   Bank of America (Request to Experian)

   b.   Michigan Schools and Government Credit Union (Request to Experian)

   c.   Ally Financial (Request to Trans Union)

   d.   Huntington Bank (Request to Trans Union)

   e.   Suburban Cadillac, Troy, Michigan with phone number of 248.939.2657 (Request to Trans Union)

   f.   TD Auto Financial (Request to Trans Union)

8. On 10/03/2014 Plaintiff called the phone number for Suburban Cadillac that appeared in the "Protect My ID" credit alert, (248.939.2657) and a person identifying himself as "Sam G or Sam B" said that he worked for the Suburban Collection. Plaintiff advised Sam of the information alleged above, and Sam advised Plaintiff he would open up an investigation, but that Plaintiff would have to fax in his contact information and the dates that Plaintiff thought the credit inquiries appeared on his report. Plaintiff did so

9. On 10/03/2014 Plaintiff received a confirmation email from "Protect My ID" that an investigation had been open on his behalf by their "Fraud Resolution Department" and that his Case Number was: 00072024. Plaintiff was advised to either file a police report or submit a complaint to the Federal Trade Commission if he wanted a "Fraud Alert" placed on his credit reports for 7 years versus the standard 90 days.

10. Plaintiff was very concerned about identity theft and he decided to file a police report. On 10/03/2014 Plaintiff called the Troy, Michigan Police Department about filing a police report about the fraudulent inquiries on his credit report given that he took an educated guess that the inquires originated via a request for auto purchasing credit from Suburban Cadillac of Troy, Michigan. The officer mentioned that it would probably be easier for Plaintiff to file with the police department associated with where he lives, which is the Macomb County Sheriff's Department.

11. On 10/03/2014 Plaintiff went to the Macomb County Sheriff's department to file a police report regarding the fraudulent inquiries on his credit report noted above. The department sent an officer to Plaintiff's home, (Deputy Cleland), to take

the report (Report Number: 78505-14). Plaintiff was advised that he could pick a copy of the report on 10/06/2014.

12.     On 10/04/2014 Plaintiff filed a complaint with the Federal Trade Commission using the website www.ftccomplaintassistant.gov.  Plaintiff was issued a report number 56606797.

13.     On 10/06/2014 Plaintiff ordered a copy of his credit reports from Experian, Equifax and Trans Union. The reports showed the inquiries mentioned in step 2 on the website. Plaintiff also placed a credit freeze on his reports from Experian, Equifax and Trans Union.

14.     On 10/06/2014 Plaintiff went to the local Social Security Administration office (26200 21 Mile Rd. Chesterfield, MI 48051), to find out if someone had compromised his employment history. Plaintiff was given a summary of his earnings back to 1979. It appeared that no one had assumed his identity for Social Security Earning purposed.

15.     On 10/06/2014 Plaintiff went to the Macomb County Sheriff's office to receive a copy of the police report noted above.

16.     On 10/06/2014 Plaintiff also called Sam from Suburban Cadillac to follow up about the results of his investigation. Plaintiff was advised that Sam hadn't started the investigation, which would take about one week and that Plaintiff had not sent him enough information.  Sam informed Plaintiff he needed additional information including dealer location, inquiry dates, and who submitted the inquiries along with Plaintiff's signature authorizing the investigation. Plaintiff submitted all of this to Sam by fax.  During the above referenced conversation Plaintiff advised Sam that

one week was too long considering Plaintiff's credit was at risk.  Sam incorrectly

told Plaintiff that Plaintiff probably made the request for credit while attempting to

buy a car and forgot about it.

17.     On 10/06/2014 Plaintiff called the Macomb County sheriff's department and

asked to speak to a detective about this credit issue.  Plaintiff spoke to a Sgt. Abro

who directed him to the voice mailbox of Detective Sgt. Dan Willis.  Plaintiff left a

message explaining my situation and requesting a return call.

18.     On 10/06/2014 I received a call from Deidra B. from the Identity Theft

Resolution department at "Protect My ID, asking Plaintiff questions about the credit

inquiries to see if Plaintiff had requested a loan.  Plaintiff indicated he had not and

advised her that he had requested an extension of my fraud alert from 90 days to 7

years by submitting a copy of his police report to Experian which "Protect My ID" is

associated with.   Deidra B. advised Plaintiff that she would continue her

investigation.

19.     Shortly thereafter, Deidre B. contacted Plaintiff to advise him that she

completed her investigation and that the inquiries would be taken off of Plaintiff's

credit report with Experian.  Because Trans Union is not associated with Experian

Deidre B.  advised Plaintiff that she would craft a letter (sent as an attachment to a

follow up email) that Plaintiff should send to Trans Union along with a copy of his

police report and a photocopy of  his identification via certified mail.  Plaintiff did so

in hopes of having the inquiries taken off of his credit report.

20.     On 10/08/2014 or 10/09/2014 Plaintiff received a call from Detective Sgt.

Dan Willis of the Macomb County Sheriff's office that he would visit Suburban

Cadillac in Troy Michigan late morning of 10/09/2014. Following his visit to the

dealer Detective Willis notified Plaintiff that he talked to Michael Smith (Finance

Manager) at based on that discussion believed that the dealer was at fault because

they made an error.

21.     Upon information and belief, Plaintiff had taken a test drive at Suburban

Cadillac approximately three (3) years prior to the above referenced credit breach,

and Defendant had unlawfully taken Plaintiff's driver's license information and fed it

into the dealer's credit application system along with the actual credit applicant's

information.

22.     Up to this point in time, no one from Suburban Cadillac contacted Plaintiff to

advise him what happened or what their investigation uncovered.

23.     Plaintiff made immediate and exhaustive attempts and efforts to protect his

credit  in the face of Defendant's conduct as evidenced above and elsewhere in this

Complaint.   Defendant's conduct created massive fear and stress for Plaintiff

because he thought that his hard earned credit reputation was severely damaged by

Defendant's conduct.

24.     Plaintiff spent extensive time, and some money, pulling credit reports and

setting security freezes on his credit reports with the major credit bureaus. This

time included making police reports, several hours of phone calls, visiting Suburban

Cadillac and reviewing his credit reports as well as researching how to address this

terrifying situation.

25.    On the evening of 10/09/2014 Plaintiff visited Michael Smith (the Finance Manager for Defendant) to voice his disappointment regarding the failure of Defendant to admit their mistake to Plaintiff and lack of a timely resolution.

26.    Shortly thereafter the parties discussed a resolution, however Defendant failed to deliver on their promises, and the solutions attempted or provided by Defendant do not serve to waive any of Plaintiff's claims herein.

27.    Between 10/02/2014 and 10/20/2014 Plaintiff received loan rejection letters from: Michigan Schools & Government Credit Union, Huntington Bank, TD Auto Finance, Bank of America and, Ally Bank.  Plaintiff's credit scores prior to receiving the above referenced letters was above 800.  As of November 6, 2014, after the rejections noted above, Plaintiff's credit scores were well below 800

28.    As of 10/17/2014 I Plaintiff had not heard from Michael Smith from Suburban Cadillac on his progress in getting the inquiries removed from Suburban internal systems or the credit bureaus. Plaintiff left a message for him, and finally spoke with Mr. Smith on 10/18/14 to find out Defendant has still not rectified the situation.

29.    On 10/26/2014 Plaintiff finally was notified by letter that the inquiries from Huntington Bank, TD Auto Finance, Ally Financial and, Suburban Cadillac had been removed from his credit report with Trans Union.  Concerned that Defendant was not making enough progress regarding the other bureaus and with their internal investigation, Plaintiff  mailed a letter to Michael Smith, asking to be compensated for the time and effort that he had invested in getting his own credit corrected.

30.     On 10/29/2014 Plaintiff received a call from Michael Smith stating that he had contacted the banks mentioned above and that all but TD Auto had agreed to remove the credit requests from their internal systems. Mr. Smith mentioned that TD Auto would need Plaintiff to sign a document before removing the inquiry from their systems.  Plaintiff then received an email from Michael Smith containing the letter required from TD Auto and a letter from Michael Smith stating that he had removed his license information from the dealerships internal systems.

31.     On 10/29/2014 Plaintiff sent the letter required from TD Auto, as noted above, as well as an email to Michael Smith requesting compensation for the mistakes made by Suburban Cadillac as evidenced above

32.     Despite Defendant's promises and efforts to remove Plaintiff's personal information from their internal system, in December of 2014 Plaintiff received a solicitation letter from Rick Kelel, the General Sales Manager at Suburban Buick, GMC, dated December 2, 2014, which establishes that Defendant did not remove Plaintiff's personal information from their internal system.

33.     As noted above Suburban Cadillac pulled Plaintiff's credit without a permissible purpose under the Fair Credit Reporting Act to obtain Plaintiff's credit report and personal information.

34.     Plaintiff never applied for credit with Suburban Cadillac nor does Plaintiff have an account with Defendant.

35.     Defendant's action in obtaining Mr. Drowns' consumer reports without a permissible purpose constitutes violations under the Fair Credit Reporting Act as noted in more detail below.  Plaintiff was monetarily damaged by Defendant's

actions, and he suffered loss of credit reputation, decrease in credit score, loss of time and effort in correcting Defendant's illegal acts, and suffered emotional distress directly relating to the claims in this Complaint.

36.     Defendant violated the FCRA, 15 U.S.C. 1681b(f) by falsely certifying to credit bureaus the purpose for which it accessed the consumer reports of the Plaintiff.

37.     Defendant knowingly violated the FCRA, 15 U.S.C.1681b(f) by illegally accessing the consumer report of the Plaintiff.

38.     As a direct and proximate cause of the above alleged actions and omissions of the Defendant, Plaintiff has suffered an unwarranted invasion of his privacy, which may expose Plaintiff to additional improper uses of the credit report or his personal identification information.

39.     The Defendant is liable to the Plaintiff for actual damages, statutory damages and punitive damages for violation of the FCRA.

40.     Defendant's actions were legally "willful."

41.     To the extent Defendant's actions were not legally "willful", they were "negligent."

### COUNT I - WILLFUL VIOLATIONS OF THE FCRA 15 U.S.C. § 1681q

42.     Plaintiff incorporates by reference all facts and allegations set forth in this complaint.

43.     Defendant'' actions as outlined above were willful.

44.     To the extent Defendant's actions were not willful they were at least negligent.

45.     Defendant, upon information and belief, willfully and deliberately did not inform the credit bureaus or the above listed banks of the true reason, or reasons, that they requested Plaintiff's consumer reports, or they made up purported reason or reasons which were willfully and/or recklessly untrue and made up under false pretenses.

46.     Section 1681q of the FCRA prohibits any person from knowingly and willfully obtaining information on a consumer from a consumer reporting agency under false pretenses.

47.     Defendant had not permissible reason to access Plaintiff's credit report because there was no debt arising from any consumer credit transaction between the parties and there was no evidence of indebtedness, by agreement as mandated by 15 U.S.C. § 1602(f).

48.     Defendant knowingly and willfully obtained the Plaintiff's consumer reports from the credit bureaus under false pretenses in violation of section 1681q of the FCRA.

49.     Section 1681n of the FCRA imposes liability upon any person who willfully fails to comply with any requirement imposed under the FCRA with respect to any consumer.

50.     Defendant is liable to Mr. Drowns under section 1681n arising out of Sterling's willful violations of section 1681 q of the FCRA.

### COUNT II - WILLFUL VIOLATIONS OF THE FCRA 15 U.S.C. 1681b

51.     Plaintiff incorporates by reference all facts and allegations set forth in this complaint.

52.     Section 1681 a(d)(1 )(A) of the FCRA defines "consumer report" as any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for credit or insurance to be used primarily for personal, family or household purposes.

53.     The credit information obtained by Defendant regarding Mr. Drowns from the credit bureaus were "consumer reports" as defined by the FCRA.

54.     Section 1681b(f) of the FCRA prohibits a person from using, or obtaining, a consumer report for any purpose unless the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under §1681b of the FCRA.

55.     Defendant was not using or obtaining Mr. Drowns' consumer reports for any purpose for which the consumer reports are authorized to be furnished under §1681b of the FCRA.

56.     Defendant did not obtain Plaintiff's credit report Second, a credit report with the intent to "use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of the consumer", in accordance with 15 U.S.C. § 1681b(a)(3)(A).

57.     Defendant has knowingly and willfully failed to comply with the requirements of section 1681b(f) of the FCRA.

58.     Defendant is liable to Mr. Drowns under section 1681n arising out of Defendant's violation of section 1681b(f) of the FCRA.

## **COUNT III - NEGLIGENT VIOLATIONS OF THE FCRA 15 U.S.C. 1681b and 1681q**

59.     Plaintiff incorporates by reference all facts and allegations set forth in this complaint.

60.     In addition to Defendant's willful and knowing violation of section 1681b(f) of the FCRA, Defendant negligently violated section 1681b(f) of the FCRA.

61.     In addition to Defendant's willing and knowing violation of section 1681(q) of the FCRA, Defendant negligently violated section 1681(q) of the FCRA.

62.     Section 1681o of the FCRA imposes liability upon any person who negligently fails to comply with any requirement imposed under the FCRA with respect to any consumer.

WHEREFORE, Plaintiff Mr. Drowns is entitled to damages as authorized under 1681o for Defendant's negligent violations of sections 1681b(f), and 1681(q).

## **REQUEST FOR RELIEF**

Plaintiff respectfully request that this Honorable Court grant the following relief:

a. Statutory and actual damages in an amount to be determined by the Court.

b. Statutory costs and attorney fees.

c. Compensatory and/or punitive damages.

d. Non economic damages for emotional distress and loss of credit reputation

e.  Any other relief, which this Court deems, appropriate.

f.  Trial by Jury.

Respectfully Submitted,

By: **/s/ Adam S. Alexander**
Adam S. Alexander (P53584)
Andrew R. Mikos (P76268)
The Alexander Law Firm
Attorney for Plaintiff
17200 W. Ten Mile Rd. Suite 200
Southfield, MI 48075
(248) 246-6353

February 17, 2015